IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DALE RENDELL,

    Claimant,

v.                                                                                              Civ. No. 14-611 WJ/SCY

CAROLYN W. COLVIN,
*Commissioner of the*
*Social Security Administration*,

    Defendant.

## REPORT AND RECOMMENDATIONS

    This matter is before me on Claimant's Motion to Reverse and Remand the Social Security Administration Commissioner's decision to deny Claimant disability insurance benefits. *Doc. 23*. For the reasons discussed below, I recommend that the Court grant Claimant's motion and remand this action to the Commissioner for further proceedings consistent with this opinion.

**I.**    **BACKGROUND**

    **A.**    **Claimant's medical history**

    Claimant Dale Rendell is a forty-eight year old man who suffers from a variety of ailments including congestive heart failure, chronic obstructive pulmonary disease ("COPD"), hypertension, Type Two diabetes, sleep apnea, back, knee, and foot pain, hypoxia, and morbid obesity. Administrative Record ("AR") at 48, 268.

    On March 19, 2010, Claimant was admitted to the hospital by Dr. W. Murray Ryan, M.D. complaining of hypoxia. AR 305-308. His x-rays indicated "minimal degenerative change in the spine" and potentially either mild hydrostatic edema or interstitial atypical pneumonia, and his echocardiogram indicated that he had congestive heart failure. AR at 315, 317. He also

1

presented with significant pedal edema, which had resolved completely by the date of his discharge. AR at 330. As a result of his hospitalization, on March 23, 2010, Claimant was evaluated by Dr. S. L. Narayanan for sleep apnea. AR at 325-327. She assessed Claimant's primary issue as hypoxemia, noting that Claimant reported that he was feeling much better and had no chest pains, and his chest X-ray did not indicate that Claimant had pneumonia. AR at 325. Dr. Narayan also noted that Claimant was morbidly obese. Her tests indicated that he had "clinically significant severe sleep disordered breathing" requiring him to sleep with a BiPAP. AR at 304.

Because of Claimant's diabetes, he made routine visits to La Clinica Del Pueblo in Tierra Amarilla, New Mexico. On April 13, 2010, Claimant met with Dr. Jody Casados, who noted he was being treated for ongoing COPD and hypertension in addition to his diabetes. Upon examination, she found that his blood pressure was high at 144/90 and that his ambulatory oxygen saturation was 80-81%, but that his breathing was generally good and that his extremities appeared healthy. AR at 365-368. Claimant stated that he was exercising daily and attempting to quit smoking. AR at 367. On May 27, 2010, Claimant sought treatment for an apparent ear infection at La Clinica Del Pueblo in Tierra Amarilla, New Mexico. While there, he reported that he was walking 20-30 minutes daily for exercise. AR at 350.

In November 2010, Dr. Samuel Pallin, a physician for the Social Security Administration, evaluated Claimant's residual functioning capacity ("RFC"). He found that Claimant was morbidly obese, and while Claimant suffered from obstructive sleep apnea and COPD, these ailments did not reach the severity of a listed impairment. AR at 453. Likewise, while Claimant had persistent hypoxemia, Type Two diabetes, hypercholesterolemia, hypertension, these disorders were not associated with physical limitations. *Id.* He assessed Claimant's RFC as being

able to stand or walk for at least two hours of an eight hour work day, as well as occasionally climb a ramp, balance, stoop, kneel, crouch, or crawl. AR at 448. A month later, a second physician, Dr. John Vorhies, confirmed Dr. Pallin's findings. AR at 455-56.

Claimant continued to seek medical treatment at La Clinica throughout 2010-2012. On December 1, 2010, Claimant reported that he was not walking as much because he had some knee pain, which he was treating with ice. AR at 469. On January 5, 2011, Margaret R. Noe, R.N. at La Clinica noted that Claimant was 310 pounds, had a BMI of 48.6 and his blood pressure was 128/80. AR at 466, On January 18, 2011, she recorded that Claimant's weight was 315.8 pounds, he had a BMI of 49.5 and his blood pressure was 128/92, but that Claimant reported that he was not exercising. AR at 465. On February 2, 2011, her record reflects that Claimant's weight was 317 pounds and his blood pressure was 128/82. AR at 462. On July 13, 2011, DaVon Knackstedt, CNP, in an examination in order to provide prescription refills, observed that while Claimant continued to be morbidly obese, he generally denied having other impeding physical or mental symptoms of his ailments. AR at 541. On November 11, 2011, at another routine examination, Mr. Knackstedt recorded that Claimant reported back pain and trouble breathing when he moved around. AR at 534. By November 23, 2011, Claimant reported feeling significantly better, with no back pain. AR at 528.

On April 16, 2012, Claimant met with Mr. Knackstedt, who diagnosed Claimant with pneumonia and ongoing COPD. AR at 290. He reported no musculoskeletal issues at that time, although Mr. Knackstedt noted that Claimant had a history of knee and lower back pain. AR at 545. On August 1, 2012, Claimant reported an injury to his knee to Mr. Knackstedt, explaining that it was likely due to overuse walking in sand and swimming. AR at 518. Mr. Knackstedt examined the knee and noted that Claimant reported pain upon manipulation of the knee and had

a slight limp. AR at 519.  Mr. Knackstedt also observed chronic airway obstruction, and found that Claimant weighed 341.5 pounds with a BMI or 53.48, his blood pressure was 124/70, and his oxygen saturation was 88%. AR at 519. By October 30, 2012, Claimant's knee pain appeared to have resolved, with Claimant seeing Mr. Knackstedt and reporting no knee pain and that he was increasing his level of exercise. AR at 513. Claimant's weight was 329 pounds, resulting in a BMI of 51.5, his blood pressure was 110/60, and his oxygen saturation was 88%. AR at 514. As of January 3, 2013, Claimant was still not reporting any knee or back pain, but was suffering from high blood sugar, high blood pressure, hyperlipidemia and he remained morbidly obese. AR at 504-05.

### B. Procedural history

Claimant filed his Titles II and XVI applications for disability insurance benefits and supplemental security income on April 14, 2010.  AR at 13.  The claims were denied on July 28, 2010 and his request for reconsideration was denied on April 4, 2011.  *Id.*  Claimant requested a hearing on June 3, 2011.  *Id.*  A video hearing was held on January 22, 2013.  *Id.*  The ALJ issued a decision on February 27, 2013 denying Claimant's request for benefits. AR at 23.

## II. APPLICABLE LAW

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R.

§ 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If claimant is not so impaired, she is not disabled and the analysis stops.

(3) If claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

(4) If, however, claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a

decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

### III.   ANALYSIS

Claimant challenges the ALJ's determinations at steps two, three, four, and five of the sequential analysis. Specifically, Claimant argues that the ALJ erred in three ways: (1) failing to consider Claimant's back and knee pain at both steps two and four; (2) failing to properly consider Claimant's obesity at steps three, four, and five; and (3) failing to make a legally sufficient finding as to Claimant's credibility. *Doc. 23.* The Court, having carefully reviewed the record and applicable law, finds that the ALJ did not err in his consideration of Claimant's knee and back pain, but failed to adequately consider Claimant's obesity at step three of the sequential

analysis. I therefore recommend that Claimant's motion to remand be granted. Because I recommend remand based on the ALJ's error at step three, I decline to address Claimant's remaining arguments.

### A.     Claimant's knee and back pain

Claimant contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to discuss his knee and back pain at step two as a severe impairment, and at step four, phase one as part of his residual functional capacity assessment ("RFC"). *Doc. 23* at 4-7. Defendant concedes that the ALJ did not find Claimant's back and knee pain to be severe impairments at step two, but argues that this failure is harmless error because the ALJ found other severe impairments and continued with the sequential analysis of Claimant's disability. *Doc. 27* at 8-11. It further contends that Claimant failed to set forth any medical evidence about his back and knee pain that would have changed the ALJ's RFC determination. *Id.*

I agree with Defendant that the ALJ's failure to consider Claimant's back and knee pain at step two is inconsequential because the ALJ found other severe impairments requiring him to carry out the sequential analysis. *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010)("an error at step two of the sequential evaluation concerning one impairment is usually harmless when the ALJ, as occurred here, finds another impairment is severe and proceeds to the remaining steps of the evaluation."); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Claimant's argument at step four, phase one, of the analysis is equally unavailing. Step four of the sequential analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023

(10th Cir. 1996).  First, the ALJ determines the claimant's residual functional capacity in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).  A claimant's RFC is "the most [he] can still do despite [his physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of claimant's past work.  "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling 82-62 (1982)).  Third, the ALJ determines whether, in light of his RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

    Claimant argues that the ALJ here failed at phase one to properly treat Claimant's complaints of knee and back pain as significant to his determination of Claimant's RFC. *See Alarid v. Colvin*, 590 F. App'x 789, 797 (10th Cir. 2014)("In formulating his RFC assessment, the ALJ must discuss the combined effect of all the claimant's medically determinable impairments, both severe and nonsevere.") Looking to the ALJ's decision, the Court notes first that at step two, the ALJ stated that Claimant "has reported back and knee pain periodically" but that Claimant's medical records did not support a finding that this pain resulted in a musculoskeletal impairment. AR at 16.  This conclusion is supported by Claimant's medical records, which show that Claimant's reports of knee and back pain were transient and that he periodically reported no knee or back pain. *See, e.g.,* AR at 290, 513, 528, 541. At step four, the ALJ further explained that as late as March 2010, Claimant was walking normally, on May 27, 2010 Claimant reported that he was walking 20-30 minutes a day, and, finally, that while he complained of intermittent back and knee pain, his examinations at La Clinica del Pueblo did not reveal any musculoskeletal issues, statements that are, again, accurate reflections of Claimant's medical history. AR at 18. It is true that, at the hearing, Claimant testified that he suffered

"constant" pain in his lower back, and that his weight "affects" his knees, but in light of Claimant's treatment records, the ALJ could properly reject this testimony.[1] *Carter v. Colvin*, 2015 WL 127391 at *2 (10th Cir. 2015). The ALJ properly considered, and substantial evidence supports his omission of, Claimant's knee and back pain. *Alarid*, 590 F. App'x at 797 (the ALJ properly excluded the claimant's allegations of numbness in his extremities where there was a lack of medical evidence to support the existence of the condition and the ALJ discussed the absence of such evidence).

### B. Claimant's Obesity

Claimant contends that the ALJ improperly relied on "boilerplate" language in discussing his obesity at steps three, four, and five of the sequential analysis, resulting in errors in the RFC and ultimate determination of what kind of work Claimant could do at step five. At steps three and four, the Claimant asserts that the ALJ was required to more extensively analyze whether his obesity, combined with his other conditions, met or equaled a severe impairment, and properly incorporate that finding into Claimant's RFC. *Doc. 23* at 7-15. Because the ALJ failed to do that, Claimant argues, the ALJ's finding that Claimant was still capable of work at step five is not supported by substantial evidence. *Id.* Respondent maintains that the ALJ properly considered and incorporated Claimant's obesity at steps three and four and correctly found at step five that Claimant could do sedentary work. *Doc. 27* at 11-17. Because I find that the ALJ erred in his discussion of Claimant's obesity at step three, and the error is not harmless, I decline to consider Claimant's arguments regarding steps four and five.

---

[1] I recognize that Claimant's argument with regard to his testimony about his knee pain has significant overlap with his challenge to the ALJ's credibility determination. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.") However, because I find that the ALJ erred at step three of the sequential analysis, I do not reach the issue of his determination Claimant's credibility at step four.

                      *i.*      *The ALJ did not properly consider Claimant's obesity at step three*

"At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (internal quotation marks omitted). Claimant bears the burden of establishing that his impairments meet or equal a listed impairment. *See Fischer–Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Here, Claimant concedes that the ALJ found his morbid obesity to be one of his severe impairments at step two of the sequential analysis. *Doc. 23* at 8. But he contends that the ALJ did not comply with Social Security Ruling ("SSR") 02-1p[2] at step three because he failed to specifically analyze the effects of Claimant's weight in concert with his other severe health issues, including his COPD, hypoxemia, heart failure, hypertension, and knee pain in order to determine whether, together, these ailments could have met or equaled a listed impairment. *Id.* Respondent asserts that the ALJ's discussion was adequate because the ALJ directly quoted SSR 02-1p, discussed Claimant's weight as "level III" obesity, and stated "[t]he effects of the claimant's obesity have been considered in determining a residual functional capacity for the claimant and in whether the claimant's condition meets or equals a listing." AR at 16-17.

At step three, an assessment of obesity in concert with other severe impairments is necessary because while "there is no listing for obesity, we will find that an individual with obesity 'meets' the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." Soc. Sec. R. 02–1p, "Titles II and XVI: Evaluation of Obesity," 2000 WL 628049, at *5. The consideration of

---

[2] This ruling addresses "SSA policy concerning the evaluation of obesity in disability claims filed under titles II and XVI of the Social Security Act." Soc. Sec. R. 02–1p, "Titles II and XVI: Evaluation of Obesity," 2000 WL 628049.

obesity at step three varies on a case by case basis: "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. . .[each case will be evaluated] based on the information in the case record." *Id.* at \*6.  It is precisely because the effect of obesity on other severe health conditions is so variable that the ALJ is, as Claimant contends, required to explain either why a claimant's obesity does, or does not, impact the severity of those other conditions. *Compare Hamby v. Astrue*, 260 F. App'x 108, 112 (10th Cir. 2008)(reversing the lower court's denial of remand where, at step three, the ALJ "failed to give adequate consideration to the effect of Ms. Hamby's obesity in combination with her other severe impairments") with *Fagan v. Astrue*, 231 F. App'x 835, 837-38 (10th Cir. 2007) (finding that the ALJ had not erred at step three by failing to "explicitly examine the impact of Ms. Fagan's obesity on each of her (non-severe) impairments"); *see also Baker v. Barnhart*, 84 F. App'x 10, 14 (10th Cir. 2003)(affirming that an ALJ must consider the combined effects of obesity with other impairments at each step of the sequential evaluation and "explain how [h]e reached [his] conclusions on whether obesity caused any physical or mental limitations.") Otherwise, the Court is left to guess *how* the ALJ has analyzed the effect of the claimant's obesity of his other severe impairments and whether or not the ALJ's conclusion can be supported by substantial evidence.  *Hogarth v. Astrue*, 2009 WL 973557 at \*6-7 (D. Colo. 2009).

    Here, the sum total of the ALJ's analysis regarding Claimant's obesity was to state that it had been "considered." AR at 17. As Claimant correctly points out, however, he had severe respiratory (COPD, hypoxemia) and cardiovascular (chronic heart failure, hypertension) conditions that, in combination with his obesity, could potentially meet or equal a listing: "obesity affects the cardiovascular and respiratory systems because of the increased workload the

additional body mass places on these systems. . . Thus, we may find that the combination of a pulmonary or cardiovascular impairment and obesity [have physical manifestations] that are of equal medical significance to one of the respiratory or cardiovascular listings." Soc. Sec. R. 02–1p, 2000 WL 628049 at *5. Because the ALJ did not explain how he reached his conclusion that Claimant's constellation of severe impairments did not rise to meet or equal such a listing, I cannot determine that his conclusion was based on substantial evidence. *Fagan*, 231 F. App'x at 837 ("We review the [C]ommissioner's decision only to determine whether substantial evidence supports that decision and whether the applicable legal standards were applied correctly.") (*quoting Shepherd v. Apfel,* 184 F.3d 1196, 1199 (10th Cir. 1999)). Nor was the ALJ's error harmless. Because it is possible that the ALJ erred in determining that Claimant's existing conditions did not meet or were equivalent to a listing at step three, this matter must be remanded for reconsideration. *Hamby*, 260 F. App'x at 113.

## IV.    CONCLUSION

Claimant has demonstrated that the ALJ erred at step three of the sequential analysis by failing to discuss the effect of her obesity on her other severe impairments, and the ALJ's error is not harmless.  The record may very well support the ALJ's and the ALJ, on remand, may simply need to further articulate how he considered Claimant's obesity.  I therefore recommend that Court reverse the Commissioner's decision denying Claimant benefits and remand this action to the Commissioner to conduct further proceedings.

/s/ Steven C. Yarbrough
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**